# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GIL CASTANEDA-CORTEZ** | : |
| **Petitioner** | : |
| v. | : 3:14-CV-1151 |
| | : (JUDGE MARIANI) |
| **MARY SABOL, et al.** | : |
| **Respondents** | : |

## MEMORANDUM OPINION

## I. INTRODUCTION

Presently before the Court is an Emergency Petition for Issuance of a Writ of Habeas Corpus and for Stay of Removal, Permanent Injunctive Relief, and Release of Petitioner from USICE Custody (Doc. 1), filed by Petitioner Gil Castaneda-Cortez on June 17, 2014. As a result of this petition, a telephone conference with counsel for all parties was held on June 18, 2014, and Petitioner and Respondents were ordered to submit briefs advocating their respective positions. The parties have fully briefed the petition, and it is ripe for decision. For the reasons discussed below, the Court will deny Castaneda-Cortez's petition.

## II. STATEMENT OF FACTS

Petitioner alleges the facts as follows.

Castaneda-Cortez, born in 1975, is a citizen of Mexico. (Doc. 1, ¶ 15). He entered the United States at the age of sixteen, and sought permanent residence in the U.S. after

living here for ten years. (*Id.* at ¶ 17). As a result, he received Lawful Permanent Resident (LPR) status in 2004. (*Id.*). His wife is also an LPR, and his four children, ranging in age from six to twenty, are all U.S. citizens. (*Id.* at ¶ 14).

On December 24 or 25, 2005, David Diaz, Castaneda-Cortez's co-worker at Big H Farms, offered him $5,000.00 to allow Diaz to store a shipment of drugs coming from Mexico in the garage of a building at Big H Farms where Castaneda-Cortez also had an apartment. (Doc. 1, ¶ 19). On December 30, a truck brought two loads of marijuana to Castaneda-Cortez's garage, and Castaneda-Cortez opened the garage doors for Diaz and his men both times, allowing them to store the marijuana therein. (*Id.* at ¶ 20).

The following day, Petitioner returned from work at another farm and was approached by U.S. Immigration and Customs Enforcement (USICE) Special Agents, who asked Castaneda-Cortez about the shipment of drugs. (*Id.* at ¶ 21). Robert Kastner, one of the USICE agents, spoke with Castaneda-Cortez in a Big H Farms office, asked Castaneda-Cortez about his involvement with Diaz, told him that USICE wanted to arrest Diaz, and asked Castaneda-Cortez if he would agree to call Diaz, while "wired", and ask Diaz to come to the farm to speak with Castaneda-Cortez about the marijuana. (*Id.* at ¶¶ 22, 23, 24). In return, Kastner told Castaneda-Cortez that he would not be arrested or federally prosecuted. (Doc. 1, ¶ 24). In reliance on Kastner's "promise of non-arrest and prosecution", Castaneda-Cortez, while "wired", called Diaz and asked him to come to Big H Farms. (*Id.* at ¶ 25). Diaz came to the property, but upon seeing numerous vehicles at the

farm, he turned around and drove away. (*Id.*). Later that day, Diaz sent an associate to Big H Farms, who was arrested upon arrival. (*Id.*). Subsequently, "Special Agent Kastner advised Petitioner that although he had promised non-arrest and non-prosecution to Petitioner, he had discussed the situation with Special Agent Kastner's Supervisor and the Supervisor directed that Special Agent Kastner arrest Petitioner and that Petitioner would be charged federally." (*Id.* at ¶ 26).

On April 22, 2008, Castaneda-Cortez pleaded guilty in the U.S. District Court for the Eastern District of Pennsylvania to one count of aiding and abetting the possession with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2. (Doc. 1, ¶ 8). As a result, he was sentenced to three years of probation. (*Id.*). On April 25, 2014, Castaneda-Cortez was required to surrender to the USICE and was placed into removal proceedings. (*Id.* at ¶ 9). On May 28, 2014, an Immigration Judge found Castaneda-Cortez to be an aggravated felon, due to his conviction for a drug trafficking crime, and ordered him removed to Mexico. (*Id.*).

Petitioner now brings an emergency petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and the Suspension Clause of the Constitution. (*Id.* at ¶ 6).

### III. STANDARD OF REVIEW

"At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

3

Pursuant to 28 U.S.C. § 2241(a), "writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." Further,

> it is well established that [the District] Court retains jurisdiction under 28 U.S.C. § 2241(c) to decide habeas petitions filed by criminal aliens subject to deportation. *Chmakov v. Blackman,* 266 F.3d 210, 213 (3d Cir. 2001) (citing *Zadvydas v. Davis,* 533 U.S. 678, 688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); *INS v. St. Cyr.,* 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001))("Both the Supreme Court and this Court have determined that notwithstanding the provisions of AEDPA or IIRIRA, district courts retain jurisdiction to hear habeas petitions filed by aliens subject to deportation for having committed certain criminal offenses."). The scope of review of such claims, however, is limited to questions of law. *Sol v. INS,* 274 F.3d 648, 651 (2d Cir.2001) (holding that "federal jurisdiction over § 2241 petitions does not extend to review of discretionary determinations by the IJ and BIA."); *Bowrin v. U.S. INS,* 194 F.3d 483, 490 (4th Cir.1999) ("Only questions of pure law will be considered on § 2241 habeas review. Review of factual or discretionary issues is prohibited."); *Bradshaw v. INS,* 2002 WL 1160832, at *1 (E.D.Pa. June 3, 2002) (citing *Sol,* 274 F.3d at 651); see also *St. Cyr,* 533 U.S. at 312, 121 S.Ct. 2271 (citing *Heikkila v. Barber,* 345 U.S. 229, 236, 73 S.Ct. 603, 97 L.Ed. 972 (1953)) (noting that scope of review in habeas corpus cases is "far narrower" than that authorized by the Administrative Procedure Act).

*Sulaiman v. Attorney General,* 212 F.Supp.2d 413, 416 (E.D.Pa. 2002).

## IV. ANALYSIS

Respondents[1] put forth two arguments in support of their opposition to Petitioner's writ. First, Respondents contend that Petitioner is precluded from challenging his removal

---

[1] Respondents urge the Court to substitute Warden Mary Sabol as the sole respondent in this case, and correctly state that, "for purposes of a habeas action, the petitioner's custodian is the warden of the institution where the petitioner is being held." (Doc. 6, at n.1). See *Yi v. Maugans,* 24 F.3d 500, 507 (3d Cir. 1994) ("It is the warden of the prison or the facility where the detainee is held that is considered the custodian for purposes of a habeas action. See *Ex Parte Endo,* 323 U.S. 283, 306, 65 S.Ct. 208, 220, 89 L.Ed. 243 (1944) (writ is directed to prisoner's 'jailer'). This is because it is the warden that has day-to-day control over the prisoner and who can produce the actual body. See *Brittingham v. United States,* 982 F.2d

4

order by contesting the legality of his underlying criminal conviction. (Doc. 6, at 3-6). Alternatively, Respondents state that the Court should deny the petition because Petitioner's claims are more appropriately brought before the Third Circuit Court of Appeals. (*Id.* at 6-8). We agree as to both arguments.

Petitioner is seeking to permanently restrain the deportation of an alien who has been convicted, by his own admission, of an aggravated felony, and is thus subject to deportation. Further, Castaneda-Cortez has flatly stated both in his Petition and during the telephone conference held in this matter, that not only does he not intend to appeal his Order of Removal to the BIA or the Third Circuit, he has no basis to do so "in that he has been finally convicted of an aggravated felony, and has no grounds of relief from removal in his Immigration Proceedings" (Doc. 1, ¶ 11). Therefore, given his acknowledgement that he has no avenue of relief under the Immigration & Nationality Act and has therefore chosen not to attempt to pursue any such relief to contest his deportation, the sole question before this Court is whether it has jurisdiction under § 2241 to entertain his petition by which he seeks to avoid deportation. For the reasons that follow, we find that this Court is without jurisdiction. Further, we find that Petitioner's admitted conviction of an aggravated felony presents a sufficient basis for his deportation under 8 U.S.C. § 1227(a)(2)(B)(i).

---

378 (9th Cir.1992); *Guerra v. Meese*, 786 F.2d 414 (D.C.Cir.1986) (Parole Commission is not custodian despite its power to release the petitioner). . . . Otherwise, the Attorney General of the United States could be considered the custodian of every alien and prisoner in custody because ultimately she controls the district directors and the prisons."). Petitioner does not address this contention in his Reply Brief. However, given our denial of Petitioner's motion, it is unnecessary for us to determine whether the other Respondents can properly be dismissed.

order by contesting the legality of his underlying criminal conviction. (Doc. 6, at 3-6). Alternatively, Respondents state that the Court should deny the petition because Petitioner's claims are more appropriately brought before the Third Circuit Court of Appeals. (*Id.* at 6-8). We agree as to both arguments.

Petitioner is seeking to permanently restrain the deportation of an alien who has been convicted, by his own admission, of an aggravated felony, and is thus subject to deportation. Further, Castaneda-Cortez has flatly stated both in his Petition and during the telephone conference held in this matter, that not only does he not intend to appeal his Order of Removal to the BIA or the Third Circuit, he has no basis to do so "in that he has been finally convicted of an aggravated felony, and has no grounds of relief from removal in his Immigration Proceedings" (Doc. 1, ¶ 11). Therefore, given his acknowledgement that he has no avenue of relief under the Immigration & Nationality Act and has therefore chosen not to attempt to pursue any such relief to contest his deportation, the sole question before this Court is whether it has jurisdiction under § 2241 to entertain his petition by which he seeks to avoid deportation. For the reasons that follow, we find that this Court is without jurisdiction. Further, we find that Petitioner's admitted conviction of an aggravated felony presents a sufficient basis for his deportation under 8 U.S.C. § 1227(a)(2)(B)(i).

---

378 (9th Cir.1992); *Guerra v. Meese*, 786 F.2d 414 (D.C.Cir.1986) (Parole Commission is not custodian despite its power to release the petitioner). . . . Otherwise, the Attorney General of the United States could be considered the custodian of every alien and prisoner in custody because ultimately she controls the district directors and the prisons."). Petitioner does not address this contention in his Reply Brief. However, given our denial of Petitioner's motion, it is unnecessary for us to determine whether the other Respondents can properly be dismissed.

Petitioner's claim under § 2241 seeking to permanently enjoin his deportation is one for which this Court has no jurisdiction. Castaneda-Cortez argues that the "essence of habeas proceedings" grants this Court the "authority to take whatever action is required to produced [sic] justice" and that "an Article III Court has broad powers to fashion remedies as needed in the context of habeas proceedings, and to use its equally broad equity jurisdiction to fashion judicial remedies as needed." (Doc. 4, at 7-8). As such, Castaneda-Cortez believes that "this Court may remedy the broken promise of a USICE Officer not to prosecute federally, where that broken promise directly results in a conviction, and a lifetime deportation from the United States." (Id. at 6). Petitioner overestimates the breadth of this Court's authority and fails to present any case law to support his broad contentions.[2]

Petitioner is without recourse. The criminal conviction that has put him in a position where he is subject to deportation under § 1227 is one that he never challenged directly or collaterally such that he is barred from now raising it as grounds for relief. Petitioner has already been prosecuted and his sentence has expired. Further, Castaneda-Cortez pleaded guilty to this conviction, and argues he is not seeking review of the conviction itself, but only basing his § 2241 petition on the resulting inequity of the USICE's alleged "promise of non-arrest and prosecution."

---

[2] Petitioner repeatedly cites to cases such as *Boumediene v. Bush*, 553 U.S. 723, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008) and *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) for the general proposition that habeas petitions allow the Court to "make a determination in light of the relevant law and facts and to formulate and issue appropriate Orders for relief", *Boumediene*, 553 U.S. at 787. However, he fails to explain how such "relief" can be granted in a situation such as this one, in the absence of any alleged legal error, any timely challenge by Petitioner to his conviction, and the existence of in-custody status.

In support of Respondents' argument that Petitioner is precluded from challenging his removal order by contesting the legality of his underlying conviction in a habeas petition, Respondents' provided the Court with several cases, which we find entirely apposite and which demonstrate the necessity of dismissing Petitioner's writ. In particular, *Edwards v. I.N.S.*, 2003 WL 22495772 (E.D. Pa. 2003), is instructive. In that case, Petitioner Edwards, an alien, was admitted as a lawful permanent resident in the U.S. *Edwards*, at *1. During his first year in the country, Edwards was arrested for various drug trafficking offenses and pleaded guilty in a New York state court to three counts of the criminal sale of a controlled substance. *Id.* This drug conviction formed the basis for an order of removal. *Id.* The I.N.S conducted a removal hearing and issued a final order of removal. *Id.* The BIA sustained the order. *Edwards*, at *1. As a result, Edwards filed a petition for a writ of habeas corpus and a district court granted a stay of removal and later remanded Edwards' case to the BIA for review, who then ordered an immigration judge to reopen Edwards' case. *Id.* At the hearing, the Immigration Judge denied Edwards' claim and ordered him removed from the country. *Id.* Edwards appealed this decision but the BIA affirmed. *Id.* Consequently, Edwards filed a writ of habeas corpus in the district court, challenging the legality of his conviction. *Edwards*, at *2. The district court found that Edwards

> [did] not have standing to directly challenge his 1991 conviction in a habeas petition. Edwards failed to file any notices of appeal at the time the judgment of conviction was entered. His recent state court attempts to vacate the judgment of conviction were denied. . . . It is undisputed that Edwards finished serving his sentence, pursuant to the 1991 conviction. . . . Given these findings, I must conclude that the sentence imposed for the 1991

7

> conviction had fully expired at the time Edwards filed his petition, that Edwards was no longer "in custody" under that conviction, and that the conviction was no longer open to direct or collateral review in its own right.

*Id.* at *3.

The Court further explained that "it seems probable that . . . if a prior conviction, used as the basis for an order of removal, is no longer open to direct or collateral attack in its own right, then a petitioner is without recourse to attack that conviction." *Id.* at *4 (citing *Drakes v. I.N.S.*, 205 F.Supp.2d 385 (M.D. Pa. 2002), *aff'd*, 330 F.3d 600 (3d Cir. 2003)). Despite Petitioner's contention that such cases are inapplicable to the present situation, (*see* Doc. 7, at 7), we disagree. *See Kumarasamy v. Attorney General*, 453 F.3d 169 (3d Cir.2006) (finding that, even where the REAL ID Act was not applicable, the district court had no jurisdiction to consider a habeas corpus petition when the Petitioner was not in custody at the time that the petition was filed). While we recognize that "in this case, Petitioner does not challenge his Federal conviction" and instead "seeks to restrain enforcement fo [*sic*] the removal order based upon the conduct of a USICE Officer" (Doc. 7, at 7), it does not alter the fact that the conviction is the basis for the present removal order. Accordingly, Petitioner must establish a basis for his contention that this Court should, while he accepts the lawfulness and finality of the conviction and the validity of the removal order, still apply equitable estoppel principles to remedy the Officer's "broken promise", a claim he never

raised as a defense or basis for appeal.[3] Ultimately, despite his representations to the contrary, Castaneda-Cortez is attempting to challenge the underlying conviction that renders him an aggravated felon, and therefore subject to the present removal order.

The fact that Castaneda-Cortez admits that he "has no viable appeal to the [BIA] nor to the U.S. Court of Appeals for the 3rd Circuit" (Doc. 1, ¶ 11), supports our analysis. Petitioner, by this admission, implicitly recognizes that jurisdiction for his claim lies in the Court of Appeals under § 1252(g). Further, Petitioner's statement acknowledges the corollary principle that under § 1252(g), this Court is without jurisdiction "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under [Chapter 12 – Immigration and Nationality]." *See Verde-Rodriguez v. Attorney General*, 734 F.3d 198, 201 (3d Cir. 2013) (The REAL ID Act "eliminated habeas corpus review over removal orders and provides that 'a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter.' 8 U.S.C. § 1252(a)(5)."). Castaneda-Cortez's admission merely demonstrates Petitioner's lack of recourse due to his own decision to plead guilty to the aggravated felony rather than put forth any plausible legal defense to his arrest, conviction, and sentence.

---

[3] Given that Petitioner failed to raise the issue of the Officer's "broken promise" prior to this habeas petition, though he clearly had the opportunity to do so, it would seem unreasonable for him to now suddenly use the Officer's alleged misconduct as a basis for enjoining USICE from removing him due to equitable estoppel.

9

However, because we recognize that, even if Petitioner were to appeal to the BIA, neither an Immigration Judge nor the BIA can apply the doctrine of equitable estoppel, we will consider the merits of Petitioner's equitable estoppel argument. *Castro v. Attorney General*, 444 Fed.Appx. 622, 625 n.7 (3d Cir. 2011) (citing *Hernandez-Puente*, 20 I. & N. Dec. 335, 339 (BIA 1991)).

We are mindful that the Third Circuit has held that § 1252(a)(5) "does not bar a habeas petition when a petitioner challenges something other than an order of removal." *Verde-Rodriguez*, 734 F.3d at 205 (citing *Kumarasamy*, 453 F.3d at 172). On this basis, and accepting Petitioner's assertion that he is challenging something other than the removal order - specifically the illegality and unfairness of the "broken promise" - we will address Castaneda-Cortez's equitable estoppel claim.[4] Nonetheless, ultimately, even if this Court had determined that it has jurisdiction to fashion an appropriate remedy as to Castaneda-Cortez's claim, Petitioner still cannot establish that equitable estoppel is an available remedy to him. The Supreme Court has noted that cases of estoppel against the Government must of necessity be rare, with the caveat that there may be some cases "in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60-61, 104 S. Ct. 2218, 81 L.

---

[4] We address Petitioner's equitable estoppel claim without conceding that Petitioner is in fact challenging something other than the order of removal.

10

Ed. 2d 42 (1984). In the wake of *Heckler*, the Third Circuit remains "one of the majority of circuits which recognize the validity of an estoppel defense against governmental parties." *United States v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987).

However, "equitable estoppel does not lie against the government in the same manner as against private litigants. Estoppel requires proof of affirmative misconduct on the part of the Government, a burden not easily met." *Ventosa v. Ashcroft*, 92 Fed.Appx. 859, 862 (3d Cir. 2004) (citations omitted). Further, while "the doctrine of estoppel can apply to action of the government . . . in order for [Petitioner] to succeed on [his] estoppel argument, [he] must prove (1) a misrepresentation by the government, (2) which [he] reasonably relied upon; (3) to [his] detriment and (4) affirmative misconduct." *DiPeppe v. Quarantillo*, 337 F.3d 326, 335 (3d Cir. 2003) (citing *Asmar*, 827 F.2d at 912; *Fredericks v. CIR*, 126 F.3d 433, 438 (3d Cir.1997)). This test "reflects the need to balance both the public interest in ensuring government can enforce the law without fearing estoppel and citizens' interests in some minimum standard of decency, honor, and reliability in their relations with their Government." *Fredericks*, 126 F.3d at 438 (internal quotation marks and citations omitted).

Assertions of equitable estoppel against the federal government are, nonetheless, rarely successful. *Cf., e.g., Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422, 110 S.Ct. 2465, 2740, 110 L. Ed. 2d 387 (1990) ("Courts of Appeals have taken our statements [in *Heckler, I.N.S. v. Miranda*, 459 U.S. 14, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982); and similar

11

cases] as an invitation to search for an appropriate case in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have reviewed.").

In light of this, Plaintiff has a heavy burden to prove that Officer Kastner's representations actually amounted to "affirmative misconduct." See *I.N.S. v. Miranda*, 459 U.S. at 19 ("Proof only that the Government failed to process promptly an application falls far short of establishing [affirmative misconduct]."); *I.N.S. v. Hibi*, 414 U.S. 5, 8-9, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973) ("We do not think that the failure to fully publicize the rights which Congress accorded under the Act of 1940, or the failure to have stationed in the Philippine Islands during all of the time those rights were available an authorized naturalization representative, can give rise to an estoppel against the Government."); *Montana v. Kennedy*, 366 U.S. 308, 81 S.Ct. 1336, 6 L.Ed.2d 313 (1961) (Petitioner's mother, an American, testified that she had been prevented from leaving Italy prior to petitioner's birth because an American Consular Officer refused to issue her a passport due to her pregnancy. The Court found that, "the testimony by petitioner's mother as to what may have been only the consular official's well-meant advice—'I am sorry, Mrs., you cannot (return to the United States) in that condition'—falls far short of misconduct such as might prevent the United States from relying on petitioner's foreign birth [in a deportation proceeding]."); *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 382-84, 68 S.Ct. 1, 3, 92 L. Ed. 10 (1947) (misrepresentations by an agent of the government as to the extent of insurance coverage do not give rise to equitable estoppel). See also *Castro*, 444 Fed.Appx. 622, 623-626

(Petitioner conceded removability but sought equitable estoppel against the government, asserting that he had been misled by the government into believing that he would succeed in his derivative application when his father's LPR application became final. Petitioner claimed he met the requirements of an equitable estoppel claim because (1) the government had misrepresented that his application would be approved when his father's application was approved; (2) Petitioner had relied on that misrepresentation to his detriment and; (3) the government committed affirmative misconduct by scheduling his father's final interview for the day after Petitioner's twenty-first birthday. The Circuit agreed with Petitioner that "the conduct of immigration officials in [Petitioner's] case was 'irresponsible' and constituted 'negligence'" but that "despite the terrible consequence for [Petitioner], there is no foundation for believing that anything more than garden variety incompetence led to the timing of the grant of LPR status to his father.").

Here, Castaneda-Cortez has failed to establish several of the elements necessary to bring an equitable estoppel claim. At the time of Officer Kastner's "broken promise", the marijuana had already been discovered in Petitioner's garage, and he had already admitted to knowing Diaz. (Affidavit of Gil Castaneda-Cortez, Doc. 1, Ex. A, ¶¶ 15-17). The fact that Castaneda-Cortez subsequently agreed to call Diaz does not establish that Petitioner relied on Officer Kastner's misrepresentation to his detriment. Petitioner's conduct, in storing the marijuana for Diaz, in the garage, occurred prior to Officer Kastner's request and formed the factual basis for Petitioner's arrest and subsequent guilty plea. Further, in light of the

aforementioned case law, Petitioner is unable to meet his heavy burden of proving that Officer Kastner's representations were more egregious than those in the myriad of other cases in which the Supreme Court and Third Circuit have rejected equitable estoppel claims against the federal government. Petitioner has failed to show that Officer Kastner's statement amounted to anything more than negligence or incompetence, let alone affirmative misconduct that resulted in his conviction.

## V. CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's Emergency Petition for Issuance of a Writ of Habeas Corpus and for Stay of Removal, Permanent Injunctive Relief, and Release of Petitioner from USICE Custody (Doc. 1). A separate Order follows.

Robert D. Mariani
United States District Judge